1  TEAGUE P. PATERSON, SBN 226659
2  **BEESON, TAYER & BODINE, APC**
   1404 Franklin Street, 5th Floor
3  Oakland, CA 94612
   Telephone:    510-625-9700
4  Facsimile:    510-625-8275
   Email:    tpaterson@beesontayer.com
5
6  Attorneys for Plaintiff TEAMSTERS LOCAL 853

7

8              **UNITED STATES DISTRICT COURT**       **BZ**

9              **NORTHERN DISTRICT OF CALIFORNIA**

10

11  TEAMSTERS LOCAL 853,

12                                         Case No.                **2944**
                Plaintiff,
13                                         **COMPLAINT TO COMPEL ARBITRATION**

14  v.                                     **[29 U.S.C. §§ 185 & 301]**

15  TETRA TECH EC, INC.,

16                Defendant.

17

18        For its Complaint in the above captioned case, Plaintiff alleges as follows:

19        1.    This is an action to compel arbitration pursuant to an arbitration agreement contained in a

20  labor contract governed by the Labor Management Relation Act, 29 U.S.C. § 301.

21                                   **Jurisdiction**

22        2.    Defendant's business operations affect interstate commerce within the meaning of the

23  National Labor Relations Act, 29 U.S.C. Sections 152(6) and (7) and 29 U.S.C. § 185.

24        3.    Plaintiff is a Labor Organization within the meaning of the National Labor Relations Act.

25        4.    During the events in this case, Defendant and Plaintiff were each parties to a written

26  collective bargaining agreement, in this instance a Southwest Division RAC Public Labor Agreement for

27  the State of California (the "PLA") entered into between Defendant Tetra Tech EC Inc. ("Tetra Tech")

28  and the International and affiliated local unions of the Brotherhood of Teamsters.

5.    This Court has subject matter jurisdiction in this proceeding under 29 U.S.C. §§ 185 and 301.

## Venue

6.    The work performed under and covered by the PLA, and the events giving rise to the instant dispute occurred at the Hunters Point Shipyard located in San Francisco, California.

7.    Plaintiff is headquartered in the Federal Judicial District of the Northern District of California.

## Intra-District Assignment

8.    Assignment to the San Francisco Division is appropriate as a substantial part of the events giving rise to the claim occurred in the County of San Francisco.

## The Parties

9.    Plaintiff is labor organization with offices located in Alameda County, specifically San Leandro, California, and is an affiliated local union of the International Brotherhood of Teamsters.

10.    Defendant Tetra Tech EC Inc. ("Tetra Tech") is a corporation licensed to do business within the State of California.

11.    Upon information and belief, in or about 2003 Tetra Tech acquired the business and assets of Foster Wheeler Environmental Corporation "Foster Wheeler."

12.    Tetra Tech is a successor to Foster Wheeler. Indeed, Tetra Tech's website describes Tetra Tech as "formerly Foster Wheeler Environmental Corporation" (*see* http://www.tetratech.com/company/operating_units.asp#profile).

13.    By way of such acquisition Tetra Tech became a party to the PLA.

## The Arbitration Agreement

14.    The parties' arbitration agreement is contained in the PLA, at Article VIII, Section 1 and states:

> It is specifically agreed that in the event any disputes arise out of the interpretation or application of this Agreement, excluding questions of jurisdiction of work, the same shall be settled by means of the procedure set out herein. No such grievance shall be recognized unless written notice is provided to the Employer by the Union, or to the Union by the Employer, within ten (10) calendar days after the alleged violation was committed."

1    15.    The grievance and arbitration provision provides for three steps, the third of which

2    requires binding and final arbitration by an arbitrator selected by the parties from a panel obtained from

3    either the American Arbitration Association or the Federal mediation and Conciliation Service.

4    16.    A true and correct copy of the PLA is attached hereto as Exhibit A, and is specifically

5    incorporated herein.

6    17.    Plaintiff has complied with the first two steps of the grievance procedure, and has sought

7    to comply with step three of the procedure by requesting and demanding that Defendant participate in

8    the selection of, and presentation of the grievance to, an arbitrator.

9    18.    Defendant has ignored and otherwise refused to respond to Plaintiff's written and oral

10    demands to proceed to arbitration.

11    **The Grievance**

12    19.    On or about November 17, 2006, Plaintiff filed a grievance under the PLA, complaining

13    of Defendant's subcontractors (entities to which Defendant has subcontracted work covered under the

14    PLA and for which Defendant is responsible) have, among other things, failed to pay employees

15    laboring under the agreement the proper rate of wages, failed to pay employees overtime and failed to

16    make fringe benefit contributions with respect to such individuals. Such employees are also members of

17    Plaintiff.

18    20.    The Agreement requires Defendant to ensure its subcontractors are bound by and adhere

19    to the terms of the PLA.

20    21.    On April 27, 2007, the undersigned attorney sent to Defendant a final demand letter

21    requesting Defendant participate in arbitration.

22    22.    Prior to April 27, 2007, on several occasions Plaintiff directly sought to move the

23    grievance to arbitration.

24    23.    Defendant has not responded to Plaintiff's or its attorney's efforts to arbitrate the

25    grievance.

26    **Prayer for Relief**

27    WHEREFORE, it is respectfully prayed that this Court assume jurisdiction, and following

28    hearing issue its Order:

---

**COMPLAINT TO COMPEL ARBITRATION**                                               3
Case No.
63604.doc

1    1.    Compelling Defendant to participate in arbitration of the grievance;

2    2.    To cooperate fully with Plaintiff in agreeing to an arbitral hearing date and making all

3    appropriate arrangements for said arbitration;

4    3.    Directing Defendant to reimburse Plaintiff for its legal fees and costs of this proceeding;

5    and

6    4.    Granting such other relief as may be just and proper.

7

8    Dated: June 6, 2007                    Respectfully Submitted,

9                                          BEESON, TAYER & BODINE, APC

10

11    By: _____

12         TEAGUE P. PATERSON
          Attorneys for Plaintiff TEAMSTERS LOCAL 853

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# EXHIBIT A

Foster Wheeler
Rd

# PROJECT LABOR AGREEMENT

### For

## SOUTHWEST DIVISION R.A.C.
## CONTRACT # N68711-98-D-5713

### In

## THE STATE OF CALIFORNIA

## TABLE OF CONTENTS

|  |  | PAGE |
|---|---|---|
| ARTICLE I | PURPOSE | 1 |
| ARTICLE II | SCOPE OF AGREEMENT | 2 |
| ARTICLE III | UNION SECURITY | 3 |
| ARTICLE IV | REFERRAL OF EMPLOYEES | 3 |
| ARTICLE V | MANAGEMENT RIGHTS | 5 |
| ARTICLE VI | HOURS OF WORK, OVERTIME, SHIFTS & HOLIDAYS | 5 |
| ARTICLE VII | WAGE SCALES AND BENEFITS | 7 |
| ARTICLE VIII | GRIEVANCE PROCEDURE | 8 |
| ARTICLE IX | JURISDICTIONAL DISPUTES | 9 |
| ARTICLE X | GENERAL WORKING CONDITIONS | 9 |
| ARTICLE XI | SAFETY | 10 |
| ARTICLE XII | WORK STOPPAGES AND LOCKOUTS | 11 |
| ARTICLE XIII | PAYMENT OF WAGES—CHECKING IN AND OUT | 11 |
| ARTICLE XIV | UNION REPRESENTATION | 12 |
| ARTICLE XV | SUBCONTRACTING | 13 |
| ARTICLE XVI | GENERAL SAVINGS CLAUSE | 13 |
| ARTICLE XVII | DURATION | 14 |
| ARTICLE XVIII | COUNTERPARTS | 14 |

ATTACHMENTS:

EXHIBIT A – TASK ORDER PROJECT LABOR AGREEMENT

EXHIBIT B - GOALS FOR MINORITY AND FEMALE PARTICIPATION

# PROJECT LABOR AGREEMENT
### for
## SOUTHWEST DIVISION R.A.C.
### CONTRACT NO. N68711-98-D-5713
### in
## THE STATE OF CALIFORNIA

This Agreement is made and entered into by and between Foster Wheeler Environmental Corporation (hereinafter referred to as the "Employer") and the International Brotherhood of Teamsters, Chauffeurs, Warehousemen and Helpers of America, the Laborer's International Union of North America, and the International Union of Operating Engineers on behalf of themselves and/or their affiliated local unions (hereinafter referred to as "Union" or "Unions"). This Agreement has been established through collective bargaining as a means of creating uniform and acceptable standards of conduct and work practices for Foster Wheeler Environmental Corporation and the Unions engaged in the execution of work on the Southwest Division R.A.C. Contract (hereinafter referred to as the "Project") in California.

## ARTICLE I

## PURPOSE

**Section 1.**     The purpose of this Agreement is to promote efficiency of operations on the Project and provide for peaceful settlement of labor disputes without strikes or lockouts, thereby promoting the public interest in assuring the timely and economical completion of the work.

**Section 2.**     The Employer and the Unions desire to mutually establish and stabilize wages, hours and working conditions of the workers employed under this Agreement by the Employer, and further, to encourage close cooperation between the Employer and the Unions to the end that a satisfactory, continuous and harmonious relationship will exist among the parties to this Agreement.

**Section 3.**     The Unions have established environmental remediation and hazardous waste training programs which meet or exceed all of the requirements of the applicable federal regulations and will provide personnel with said training.

**Section 4.**     The Unions have competent, skilled, qualified and certified workers available to perform the work incidental to the effective accomplishment of this Project.

1

## ARTICLE II

## SCOPE OF AGREEMENT

Section 1.      It is the intent of the parties that this Agreement apply to work performed on construction jobsites for task orders issued to Employer under the Project, as limited by other parts of this Agreement. Further, with respect to the International Union of Operating Engineers, this Agreement shall not apply to work performed in San Diego County; this Agreement shall be binding on the International Union of Operating Engineers only as it applies to work performed on construction jobsites outside San Diego County. Any references to the application of this Agreement to work performed in San Diego County shall be deemed to refer only to the International Brotherhood of Teamsters, Chauffeurs, Warehousemen and Helpers of America and the Laborer's International Union of North America.

Section 2.      The Employer recognizes the Unions as the sole and exclusive bargaining representatives for all employees performing work coming within the recognized jurisdiction of the Union.

Section 3.      This Agreement shall not apply to executives, engineers, technicians, draftsmen, QC inspectors, supervisors, assistant supervisors, timekeepers, messengers, office workers, guards or other nonmanual employees.

Section 4.      This Agreement represents the complete understanding of the parties; and the Employer shall not be required to sign any other agreement during the performance of the work described herein, except such participation agreements, relating to the payment of fringe benefits, which may be required by any fringe benefit trust fund.

Section 5.      All parties recognize that there may be extenuating circumstances when it is in the mutual interest of the parties to modify the terms of this Agreement. In that event, it will not be a violation of this Agreement for the parties to meet and mutually agree to make such modifications to meet a specific need on the Project or for a specific task order.

Section 6.      This Agreement shall supersede all other Agreements between Employer and any Local of the Union for any work covered herein.

Section 7.      The liability of the Employer and the liability of the Unions shall be several and not joint.

Section 8.      This Agreement shall be binding only on Foster Wheeler Environmental Corporation for this Project, and shall not apply to its parents, affiliates, subsidiaries or other divisions of Foster Wheeler Corporation or to their subcontractors.

2

Section 9.    This Agreement may be amended only by written agreement signed by the parties signatory hereto.

## ARTICLE III

### UNION SECURITY

Section 1.    The employees of the Employer performing work within the scope of this Agreement shall become and remain members of the Union as a condition of employment from the seventh (7th) but not later than the eight (8th) day of employment, or the effective date of this Agreement, whichever is later.

Section 2.    It is further agreed that all Union members employed by the Employer shall maintain their membership in good standing in the Union.

Section 3.    Failure of any employee to pay or tender normal initiation fees or dues as required by this Agreement shall, upon the request of the Union in writing, result in the termination of such employee.

## ARTICLE IV

### REFERRAL OF EMPLOYEES

Section 1.    The Employer shall have the right to select and hire directly all supervisors it considers necessary and desirable. Applicants for various classifications covered by the Agreement required by the Employer on its projects shall be referred to the Employer by the Union and/or its respective Local Unions. The Employer shall have the right to determine the competency of all employees, the right to determine the number of employees required, the sole responsibility for selecting the employees to be laid off, and the right to take disciplinary action at its discretion up to and including suspension or termination of employment (depending upon the severity) for unacceptable conduct or violation of a project rule or requirement. The Employer shall also have the right to reject any applicant referred by the Union and/or its respective Local Unions.

Section 2.    The Union represents that its local unions administer and control their referrals and it is agreed that these referrals will be made in a nondiscriminatory manner and in full compliance with federal, state and local laws and regulations which require equal employment opportunities and nondiscrimination. Referrals shall not be affected in any way by the rules, regulations, by-laws, constitutional provisions, or any other aspect or obligation of Union membership, policies or requirements. In the event of a conflict between Union procedures and federal, state and/or local laws requiring equal employment opportunities and nondiscrimination. Union referral procedures shall be subordinate to such requirements. The Project is subject to affirmative action goals for minority and female participation. The applicable goals for the state of California are attached as Exhibit B. The Unions shall make every effort to comply with these goals,

3

and Employer has the right to request prospective employees in accordance with these goals.

Section 3.　　In the event the referral facilities maintained by the local unions do not refer qualified applicants as requested by the Employer within a forty-eight (48) hour period after such requisition is made by the Employer (Saturdays, Sundays and holidays excluded), the Employer may employ applicants from any source.

Section 4.　　The Employer agrees to be bound by the hiring referral rules in a local area not inconsistent with the terms of this Agreement. Where the hiring referral rules that prevail in a local area are on other than an exclusive basis, such rules shall be applicable if not in violation of either state or federal law.

Section 5.　　The Unions and their respective Local Unions will exhort their utmost efforts to recruit sufficient number of skilled and certified craftsmen to fulfill the manpower requirements of the Employer.

Section 6.　　The Employer shall have the right to assign key employees to the Project. Key employees are defined as craft employees who possess special skills or abilities and are not readily available in the area. Key personnel shall be named and agreed to by the Employer and the respective Union. The Employer shall have the right to transfer key employees to different task order jobsites subject to this Agreement, when deemed necessary by Employer.

Section 7.　　The Employer shall have the right to recall to employment within six (6) months of layoff employees previously assigned to work covered by this Agreement.

Section 8.　　In referring to employees in this Agreement, the masculine gender is used for convenience only and shall refer both to males and females.

Section 9.　　Referred employees, upon dispatch, must provide the following documentation: two (2) forms of identification, forty (40) hour and current eight (8) hour refresher certifications to work on hazardous waste sites per OSHA 29 CFR 1910.120 (8CCR5192), certification for medical fitness to work on hazardous waste sites and fitness to wear respirators, and specific craft certifications to meet job specific requirements as required, including but not limited to equipment operator's license and evidence of training and experience in operation of equipment.

4

## ARTICLE V

## MANAGEMENT RIGHTS

Section 1.    The Employer retains and shall exercise full and exclusive authority and responsibility for the management of its operations, except as expressly limited by the terms of this Agreement.

## ARTICLE VI

## HOURS OF WORK, OVERTIME, SHIFTS AND HOLIDAYS

Section 1.    The standard workday shall consist of eight (8) hours of work between 6:00 am and 6:00 pm, with one-half hour designated as an unpaid period of lunch. The standard workweek shall be five (5) consecutive days of work commencing on Monday. Nothing herein shall be construed as guaranteeing any employee eight (8) hours of work per day or forty (40) hours of work per week.

Section 2.    Any employee reporting for work and for whom no work is provided, due to inclement weather or other conditions beyond the control of the Employer, shall receive two (2) hours pay at the regular straight time hourly rate. Any employee who is directed by the Employer to start work and works beyond the two (2) hours will be paid for actual time worked, exclusive of a one-half (1/2) hour lunch period if he works beyond mid-shift. Whenever minimum reporting pay is provided for employees, they will be required to remain at the jobsite available for work for such time as they receive pay, unless released sooner by the Employer's principal supervisor or designated representative. The provisions of this Section are not applicable where the employee voluntarily quits or lays off, in which case the employee shall be paid for the actual time worked.

Section 3.    All time after the established workweek of forty (40) hours shall be paid at the rate of time and one-half. All time on Sundays and the Holidays stated in Section 8 shall be paid for at the rate of double time.

Section 4.    It will not be a violation of this Agreement when the Employer considers it necessary to shut down to avoid the possible loss of human life, because of an emergency situation that could endanger the life and safety of any employee. In such case, employees will be compensated only for the actual time worked. In the case of a situation described above, whereby the Employer requests employees to wait in a designated area available for work, the employees will be compensated for the waiting time.

Section 5.    Shifts may be established when considered necessary by the Employer.

(a) Shift hours and rates will be as follows:

5

First Shift: Eight (8) hours pay for eight (8) hours worked plus one-half (1/2) hour unpaid lunch period.

Second Shift: Eight (8) hours pay for seven and one-half (7 ½) hours worked plus one-half (1/2) hour unpaid lunch period.

Third Shift: Eight (8) hours pay for seven (7) hours worked plus one-half (1/2) hour unpaid lunch period.

(b) Shifts may be established and continue for a minimum of three (3) consecutive workdays.

(c) If only two shifts are to be worked, the Employer may regulate starting times of the two shift operations to permit the maximum utilization of daylight hours.

Section 6.   (a) In lieu of Section 5 above, the Employer may establish one or two four (4) day ten (10) hour shifts as the regular straight-time hourly rate of pay, Monday through Thursday. These shifts are exclusive of a thirty (30) minute unpaid lunch period. The day shift shall start between the hours of 6:00 am and 8:00 am and the second shift shall start work at a time designated by the Employer. The day shift shall work four (4) days at ten (10) hours for ten (10) hours pay. The second shift shall work four (4) days at ten for ten (10) hours pay. Straight time is not to exceed ten (10) hours a day or forty (40) hours per week. Staggered starting times may be established for various work operations. The Employer will notify the Union(s) at least three (3) working days prior to starting a four (4) day ten (10) hour shift.

(b) If employees lose ten (10) or more straight time hours in any given week because of weather, or other conditions beyond the control of the employer, the Employer, at its option, may schedule a voluntary make-up day on Friday (if a four (4) day week is scheduled). Employees will be paid at the straight time rate for such make-up work.

Section 7.    It is recognized by the parties to this Agreement that the standard workweek may not be desirable or cost effective for some task orders, and other arrangements for hours of work could be necessary. On task orders where job conditions require a change in the workday, workweek, and/or shifts, the parties may change these conditions to meet the requirements of the specific task order.

Section 8.    Recognized holidays shall be as follows: New Year's Day, Memorial Day, Fourth of July, Labor Day, Thanksgiving Day, Day after Thanksgiving, and Christmas Day. Under no circumstances shall any work be performed on Labor Day except in cases of emergency involving life or property. In the event a holiday falls on Sunday, the following day, Monday, shall be observed as such holiday. There shall be no

6

paid holidays. If employees are required to work on a holiday, they shall receive the appropriate rate; but in no case shall such overtime rate be more than double the straight-time rate.

## ARTICLE VII

### WAGE SCALES AND BENEFITS

Section 1.    The Employer and the Unions agree that wages, fringes, and premiums to be paid shall be only those incorporated in the Davis Bacon Act Wage Determination provided by the Client as applicable to each task order to which this Agreement applies.

Section 2.    The Employer adopts and agrees to be bound by the written terms of legally established trust agreements specifying the detailed basis on which payments are to be made into, and benefits paid out of, such trust funds. The Employer authorizes the parties to such trust agreements to appoint trustees and successor trustees to administer the trust funds and hereby ramifies and accepts the trustees so appointed as if made by the Employer. Nothing contained in this Section is intended to require the Employer to become a party to or be bound by a local collective bargaining agreement except for the employee benefit fund contributions as required herein, nor is the Employer required to become a member of any employer group or association as a condition for making such contributions.

Section 3.    Upon presentation of a proper authorization form executed by the individual employee, the Employer agrees to deduct Union dues as well as other authorized deductions from net pay after taxes and remit same to the appropriate Local Union in accordance with applicable law. It is understood that the Employer will remit each month the Union dues deducted in accordance with this Article on transmittal forms used for fringe benefit contributions and that the pro-rata costs of such forms and the collection and accounting thereof will be paid by the Union to the fringe benefit administrator.

Section 4. The Employer agrees to submit to the IBT Training Education and Trust, the Laborers' Employers Cooperation and Education Trust, and the national training fund sponsored by the International Union of Operating Engineers, as appropriate, the amount of ten cents ($.10) per hour for all hours worked by all employees of the Employer covered by this Agreement, but only if included in the amount of the applicable Davis-Bacon determination.

Section 5. In the event that the Davis-Bacon determination does not meet the area minimum rates of the Union or the work involved is not covered by the Davis-Bacon Act, then the parties shall meet and establish comparable wage rates and fringe benefits in order to utilize the trained and certified crafts on a given task order.

7

## ARTICLE VIII

### GRIEVANCE PROCEDURE

**Section 1.**    It is specifically agreed that in the event any disputes arise out of the interpretation or application of this Agreement, excluding questions of jurisdiction of work, the same shall be settled by means of the procedure set out herein. No such grievance shall be recognized unless written notice is provided to the Employer by the Union, or to the Union by the Employer, within ten (10) calendar days after the alleged violation was committed.

**Section 2.**    A grievance shall be settled according to the following procedure:

STEP 1: The dispute shall be referred to the Business Representative of the Local Union involved or his designated representative and the Task Order Project Superintendent and/or the Employer's representative on the task order jobsite.

STEP 2: In the event that the Business Representative of the Local Union and the Project Superintendent and/or the Employer's task order representative at the jobsite cannot reach agreement within ten (10) calendar days after a meeting is arranged and held, the matter shall be referred to the International Union and the Labor Relations Representative of the Employer.

STEP 3: If the dispute is not resolved within ten (10) calendar days after completion of Step 2, the Employer and the Union shall choose a mutually agreed upon Arbitrator for final and binding arbitration. The impartial Arbitrator will be selected from a panel of arbitrators submitted by and in accordance with the rules and regulations of the American Arbitration Association or the Federal Mediation and Conciliation Service. The decision of the Arbitrator shall be binding upon all parties. The Arbitrator shall have no authority to change, amend, add to, or detract from any of the provisions of this Agreement. The expense of the impartial Arbitrator shall be borne equally by the Employer and the involved Union.

**Section 3.**    The time limits specified in any step of the Grievance Procedure may be extended by mutual Agreement of the parties initiated by the written request of one party to the other, at the appropriate Step of the Grievance Procedure. However, failure to process a grievance, or failure to respond in writing within the time limits provided above, without a request for an extension of time, shall be deemed a waiver of such grievance, but without precedent to the processing of and/or resolution of like or similar grievance(s) or dispute(s).

8

Section 4.    In order to encourage the resolution of disputes and grievances at Steps 1 and 2 of this Grievance Procedure, the parties agree that such settlements shall not be precedent setting.

## ARTICLE IX

### JURISDICTIONAL DISPUTES

Section 1.    There will be no strikes, no work stoppages or slowdown, or other interferences with the work because of jurisdictional disputes.

Section 2.    Project conditions do not always justify strict adherence to craft lines which in itself does not establish precedent or change the appropriate jurisdiction for the crafts involved. Jurisdictional disputes cannot and shall not interfere with the efficient and continuous operations required in the successful application of the intent of this Agreement. Periodic review of the work assignments shall be made for the purpose of adjusting such assignments as appropriate to take care of changing needs.

Section 3.    The Local Unions involved agree that the International Unions shall be requested to promptly assign International Representatives to meet with the Employer and attempt a settlement in the event of questions of assignment.

Section 4.    If the International Representatives cannot reach agreement on any dispute, they shall jointly prepare and sign a complete statement of the facts and circumstances involved in the dispute, which shall be submitted to the respective General Presidents of the Unions for final resolution.

## ARTICLE X

### GENERAL WORKING CONDITIONS

Section 1.    The selection of craft foremen and/or general foremen and the number of foremen required shall be entirely the responsibility of the Employer. All foremen and/or general foremen shall take orders from the designated Employer representatives. Craft foremen shall be designated working foremen at the discretion of the Employer.

Section 2.    There shall be no limit on production by workmen or restrictions on the full use of tools or equipment. Craftsmen using tools shall perform any of the work of the trade and shall work under the direction of the craft foremen. There shall be no restrictions on efficient use of manpower other than as may be required by safety regulations.

Section 3.    Workers shall be at their place of work at the starting time and shall remain at their place of work performing their assigned functions under the supervision of the Employer until quitting time. The parties reaffirm their policy for a fair day's work for a fair day's wage.

9

Section 4.    The Employer may utilize the most efficient methods or techniques of construction, tools and other labor saving devices to accomplish the work. Practices not a part of the terms and conditions of this Agreement will not be recognized.

Section 5.    Neither the Unions nor their local unions shall coerce or in any way interfere with the Client's personnel, operation, or facilities at a Project jobsite. The Client's right to contract directly with other companies for work at a Project jobsite shall not be limited, and the Union shall cooperate and not interfere with the Employer's operations.

Section 6.    Slowdowns, standby crews and featherbedding practices will not be tolerated.

Section 7.    Individual seniority shall not be recognized or applied to employees working on the Project under this Agreement.

Section 8.    The Employer shall establish such reasonable Project and jobsite rules as the Employer deems appropriate. These rules will be reviewed at the pre-job conference and posted at the task order jobsite by the Employer, and may be amended thereafter as necessary.

Section 9.    Employers and representatives of the International Unions, District Councils and/or Local Unions having jurisdiction shall hold a pre-job conference so that the start and continuation of work may progress without interruption. It shall be the purpose of the pre-job conference for the Employer and the Unions to agree on such matters as the length of the work week, the number of key employees to be brought in, the number of employees employed, the method of referral, the check-off of union dues, initiation fees or agency shop fees, the applicable wage rates and fringe benefit contributions, a review of the site plan, site safety and health plan, site control, air monitoring, and all other aspects pertaining to the Project work to be performed; provided that it is agreed that the interpretation shall be a matter for the principal parties hereto.

Section 10.    Employees required to wear protective clothing will be given sufficient time to go through the required procedures for doffing, donning and decontamination, and this shall be considered time worked.

## ARTICLE XI

## SAFETY

Section 1.    The employees covered by the terms of this Agreement shall at all times, while in the employ of the Employer, be bound by the safety rules and regulations as established by the employer in accordance with the Construction Safety Act, OSHA, CFR

10

1910.120, and any other federal and state regulations. These rules and regulations will be published and posted at conspicuous places throughout the Project jobsites.

Section 2.    In accordance with all federal and state regulations, it shall be the exclusive responsibility of the Employer on a jobsite to which this Agreement applies to assure safe working conditions for its employees and compliance by them with any safety rules contained herein established by the Employer. Nothing in this Agreement will make the Unions or any of their Local Unions liable to any employees or to other persons in the event that injuries or accidents occur.

## ARTICLE XII

## WORK STOPPAGES AND LOCKOUTS

Section 1.    During the term of this Agreement there shall be no strikes, picketing, work stoppages, slowdowns, or other disruptive activity for any reason by the Unions, their applicable Local Unions, or by any employee; and there shall be no lockout by the Employer.

Section 2.    The Unions and their applicable local Unions shall not sanction, aid or abet, encourage, or continue any work stoppage, strike, picketing, or other disruptive activity at the Employer's jobsites and shall undertake all reasonable means to prevent or to terminate any such activity. No employee shall engage in activities which violate this Article. Any employee who participates in or encourages any activity which interferes with the normal operation of work on this Project shall be subject to disciplinary action, including discharge.

Section 3.    Neither the Unions nor their applicable Local Unions shall be liable for acts of employees for which they have no responsibility. The International Union General President or Presidents will immediately instruct, order, and use the best efforts of their office to cause the Local Union or Unions to cease any violations of this Article. The principal officer or officers of a Local Union will immediately instruct order, and use the best efforts of their office to cause the employees the Local Union represents to cease any violations of this Article. A Local Union complying with this obligation shall not be liable for unauthorized acts of employees it represents. The failure of the Employer to exercise its right in any instance shall not be deemed a waiver of its right in any other instance.

## ARTICLE XIII

## PAYMENT OF WAGES – CHECKING IN AND OUT

Section 1.    Employees shall be paid in full on the job once each week (on the same day) but in no event shall more than five (5) days (Saturday, Sunday and holidays excluded) wages be withheld. The Employer shall make arrangements with a local bank to cash regular out-of-state payroll checks.

(a) If the regular payday falls on a holiday, employees shall be paid on the last regular workday before the holiday.

(b) If payment is not made expressly as provided herein, then the employee shall be paid waiting time until paid; waiting time to be paid at two (2) hours pay at the appropriate wage rate for each twenty-four (24) hour period.

(c) An employee's pay check stub or attached statement shall contain an itemized statement showing the breakdown of straight time hours, overtime hours and all authorized deductions, and must indicate the name and address of the Employer.

(d) Notwithstanding the above, if circumstances beyond the control of the Employer occur then Section 1(b) will not apply.

Section 2.    Employees who quit shall be paid not later than seventy-two hours after quitting. For purposes of this Section, the date of mailing shall constitute the day of payment.

Section 3.    When employees are laid off, they shall be paid in full immediately. In the event that the employee is not paid immediately, they shall receive two (2) hours pay at the appropriate hourly wage rate for each twenty-four (24) hour period thereafter until said check is mailed to an address of the employee's choice. The postmark on the envelope will serve as the cut off for any penalty.

Section 4.    The Employer may utilize brassing, time clocks, or other systems to check employees in and out. Each employee must check himself in and out. The Employer will provide adequate facilities for checking in and out in an expeditious manner.

## ARTICLE XIV

### UNION REPRESENTATION

Section 1.    Authorized representatives of the Unions and their Local Unions shall have access to the Project jobsites, provided they do not interfere with the work of the employees and further provided that such representatives fully comply with the visitor and security rules established for the particular jobsite, including possessing the proper OSHA certifications required for access to specific areas of the jobsite.

Section 2.    Each Union which is party to this Agreement, or its applicable Local Union, shall have the right to designate a working journeyman as a Steward. Such designated Steward shall be a qualified worker performing the work of the craft. The Steward shall be concerned with the employees of the Steward's Employer only. The Employer shall notify the Union prior to discharge of the Steward.

12

Section 3.    Where the Client's personnel may be working in close proximity to the construction activities, the Unions agree that under any and all conditions Union representatives, stewards, and individual workmen will not interfere in any manner with the Client's personnel or with the work which is being performed by the Client's personnel.

## ARTICLE XV

## SUBCONTRACTING

Section 1.    The Employer agrees that each subcontractor who is engaged by the Employer under task orders to perform work at a construction jobsite outside San Diego County shall become signatory to and be bound by the terms and conditions of this Agreement. It is understood that qualified union, competitive subcontractors may not be available. If this is the case, it is understood and agreed that the Employer may employ a non-signatory subcontractor who shall become signatory to this Agreement prior to starting work.

Section 2.    For subcontractors who are engaged by the Employer under task orders to perform work at a construction jobsite in San Diego County, this Agreement shall apply only to those task orders so designated by the Employer in accordance with the following procedure:

    (a) In the event that the Employer decides that this Agreement shall not apply to the work to be performed under a given task order, the Employer will nonetheless provide a copy of the Request for Proposal or Invitation for Bid to the Union.

    (b) If the Employer decides that this Agreement shall apply to the work to be performed under a given task order, then the parties will execute a Task Order Project Labor Agreement, in the form attached as Exhibit A, incorporating the terms and conditions of this Agreement.

## ARTICLE XVI

## GENERAL SAVINGS CLAUSE

Section 1.    If any Article or provision of this Agreement is declared invalid, inoperative or unenforceable by any competent authority of the executive, legislative, judicial or administrative branch of the Federal or any State government, the Employer and the Unions shall suspend the operation of such Article or provision during the period of its invalidity and shall substitute by mutual consent, in its place and stead, an Article or provision which will meet the objections to its validity and which will be in accord with the intent and purpose of the Article or provisions in question.

13

Section 2.     If any Article, portion or application thereof of this Agreement shall be held invalid, inoperative, or unenforceable by operation of law or by any of the above-mentioned tribunals of competent jurisdiction, then the validity and enforceability of the remaining Articles, portions or applications thereof, including remaining aspects of an affected Article, shall not be impaired and, to the extent necessary, the parties shall negotiate an equitable adjustment in the affected Articles of this Agreement.

## ARTICLE XVII

### DURATION

Section 1.     This Agreement is effective as of the date of execution by Foster Wheeler Environmental Corporation and shall continue in full force and effect for the duration of the Project. Agreement may be amended only by written agreement, executed by the parties signatory hereto.

## ARTICLE XVIII

### COUNTERPARTS

Section 1.     This Agreement may be executed and delivered in counterparts, each of which when executed and delivered shall be deemed to be an original, but such counterparts together shall constitute one and the same document.

14

NOW, IN WITNESS WHEREOF, AND INTENDING TO BE LEGALLY BOUND, the parties hereto have duly executed this Agreement by their duly authorized representatives.

FOR THE UNIONS:

International Brotherhood of Teamsters, Chauffeurs, Warehousemen and Helpers of America

By:_____        Signature:_____
          (Printed/Typed)

Title:_____          Date:_____

Laborers International Union of North America

By: _____         Signature _____
          (Printed/Typed)

Title: _____          Date: _____

International Union of Operating Engineers

By:_____        Signature:_____
          (Printed/Typed)

Title: _____          Date:_____

FOR THE EMPLOYER:

Foster Wheeler Environmental Corporation

By:   Neil Hart                      Signature:
          (Printed/Typed)

Title: Program Manager               Date:   12/9/99

15

NOW, IN WITNESS WHEREOF, AND INTENDING TO BE LEGALLY BOUND, the parties hereto have duly executed this Agreement by their duly authorized representatives.

FOR THE UNIONS:

International Brotherhood of Teamsters, Chauffeurs, Warehousemen and Helpers of America·

By:_____          Signature _James P Hoffa_
    (Printed/Typed)

Title:_____          Date:_____

Laborers International Union of North America

By:_____          Signature:_____
    (Printed/Typed)

Title:_____          Date:_____

International Union of Operating Engineers

By:_____          Signature:_____
    (Printed/Typed)

Title:_____          Date:_____

FOR THE EMPLOYER:

Foster Wheeler Environmental Corporation

By:___Neil Hart_____          Signature:_____
    (Printed/Typed)

Title:___Program Manager_____          Date:___12/9/99_____

15

NOW, IN WITNESS WHEREOF, AND INTENDING TO BE LEGALLY BOUND, the parties hereto have duly executed this Agreement by their duly authorized representatives.

FOR THE UNIONS:

International Brotherhood of Teamsters, Chauffeurs, Warehousemen and Helpers of America

By:_____          Signature:_____
      (Printed/Typed)

Title: __  _____          Date:_____

Laborers International Union of North America

By:_____          Signature:_____
      (Printed/Typed)

Title:_____       Date:_____

International Union of Operating Engineers , Local Union No. 12

By:William C. Waggoner            Signature:_____
      (Printed/Typed)

Title:Business Manager, Local #12 and   Date:   September 30, 1999
      General Vice President

FOR THE EMPLOYER:

Foster Wheeler Environmental Corporation

By:  Neil Hart                    Signature:_____
        (Printed/Typed)

Title:   Program Manager          Date:   12/9/99

15